UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 07-80378-Civ-DIMITROULEAS/SNOW

HEATH BLEECHER on behalf of
all others similarly situated,

            Plaintiff,

            v.

NIGHTINGALE NURSES, LLC.,

            Defendant.
_____/

**REPORT AND RECOMMENDATION**

THIS CAUSE is before the Court on Plaintiff's Motion to
Vacate the Judgment and Set Aside the Stipulation (DE 31),
Plaintiff's Emergency Motion for Evidentiary Hearing (DE 26) and
Plaintiff's Emergency Motion for a Protective Order (DE 27), which
were referred to United States Magistrate Judge Lurana S. Snow for
report and recommendation.

I. PROCEDURAL HISTORY

The complaint was filed May 1, 2007, by Heath Bleecher on
behalf of all others similarly situated, alleging violation of the
Fair Labor Standards Act (FLSA), 29 U.S.C. § 207, et seq., for
failure to pay overtime wages.  On May 9, 2007, plaintiff's counsel
filed consent to join forms signed by Scott Span and Ginger Minkin.
(DE 4 and 5)  The forms stated that the opt-in plaintiff "has
assigned to [his/her] counsel all right, title and interest to
recover any attorney's fees and costs in this action pursuant to 29
U.S.C. § 216(b)," and that "any attempt by Plaintiff to settle,

resolve, or waive the right of Cathleen Scott, P.A. to attorney's fees and costs is ineffective and unenforceable." (Id.)

Service of process was effected on May 8, 2007. (DE 10) On May 29, 2010, the defendant filed an unopposed motion for a twenty-day extension of time to respond to the complaint, stating that the parties were discussing resolution of the matter. (DE 11) The motion was granted. (DE 12) On June 14, 2007, plaintiffs' counsel filed a consent to join form on behalf of Tyneshia Barnett. (DE 16)  On June 22, 2010, a consent to join form was filed on behalf of Steve Limage. (DE 16)  A consent to join form was filed on behalf of Tara Ramsey on July 27, 2007. (DE 20)

The Court granted two additional unopposed motions for an extension of time to respond to the complaint in order to continue settlement talks. (DE 15 and 18)  The latter order set the deadline for a response to the complaint on July 13, 2007.  The answer to the complaint was filed July 23, 2007. (DE 19)  The parties filed a joint scheduling report on August 8, 2007, and filed their selection of a mediator on August 10, 2007. (DE 21 and 23)

On August 24, 2007, counsel for the parties filed a stipulation of dismissal without prejudice. (DE 24) The Court issued an order dismissing the case without prejudice and closed the case. (DE 25)

On November 2, 1009, Mr. Bleecher filed Plaintiff's Motion to Vacate the Judgment and Set Aside the Stipulation (DE 31); Plaintiff's Emergency Motion for a Protective Order, to prevent or enjoin plaintiff's counsel Cathleen Scott from speaking

about the case with Nightingale's attorney without prior Court approval, and to prevent or enjoin counsel and the law firms for the parties from contacting witnesses or potential witnesses without prior Court approval (DE 27); and Plaintiff's Emergency Motion for Evidentiary Hearing, seeking to expose the collusion between his former counsel, Cathleen Scott, Esq., and Nightingale to prevent him from prosecuting his Whistleblower claim against Nightingale in state court (DE 26).[1]

## II. THE MOTIONS

### A. Plaintiff's Motion to Vacate the Judgment and Set Aside the Stipulation (DE 31)

The motion asserts that the Court adopted an improper stipulation by counsel for the parties and closed the case without reviewing the actual settlement agreements for conformity with the requirements of the FLSA[2] and allowed the defendant to pay attorney's fees and costs of $5,500.00 to plaintiff's counsel without requiring a court hearing on the amount.[3]

---

[1] Mr. Bleecher also filed a motion for sanctions against Cathleen Scott, Esq., (DE 33) and a motion for sanctions against Nightingale Nurses A Florida LLC and Allan H. Weitzman, Esq. (DE 29) These motions are not the subject of the instant report and recommendation.

[2] Plaintiff's counsel asked each plaintiff to estimate his or her overtime damages. Mr. Bleecher's affidavit states that he estimated his damages as $865.20, which statutorily is matched by the same amount of liquidated damages, making his claim total $1,730.40 (DE 38-1. ¶ 20) However, his claim was settled for $850.00.

[3] Thereafter, the defendant sent 1099 forms to each of the plaintiffs for his or her share of the attorney's fees paid to Scott, which resulted in Mr. Bleecher having to pay internal

Mr. Bleecher seeks to vacate the stipulation and order of dismissal on three grounds: (1) that the dismissal was the result of fraud on the court; (2) that the stipulation for dismissal is contrary to public policy against compromise and release of liquidated damages, and (3) that the dismissal was effected by fraud against Mr. Bleecher by his own counsel.

Mr. Bleecher asks the Court to consider the relevant documents which were not presented to the Court. His affidavit states that on June 18, 2007, plaintiffs' counsel submitted a demand letter to the defendant seeking $1730.40, representing his overtime wages owed of $865.20 and an equal amount of liquidated damages; he affirms that he read this letter. (DE 30 Exh. A., ¶ 20 and 38-2, Exh. 12) On July 12, 2007, Mr. Bleecher sent an e-mail to Scott, discussing the defendant's offer to settle Mr. Bleecher's claims for $300.00. (DE 38-2,Exh 21B) Mr. Bleecher also discussed the defendant's offers with the other plaintiffs. (DE 38-2, Exh. 24)

On August 7, 2007, counsel for the defendant served an Offer of Judgment on Scott, to settle Mr. Bleecher's claim for $850.00 for his FLSA damages, including liquidated damages, plus reasonable attorney's fees and costs actually incurred. (DE 38-3, Exhibit 28) That same day Scott sent the Offer of Judgment and a letter to Mr. Bleecher, noting that if the offer were not accepted within ten days pursuant to Fed.R.Civ.P. 68, the offer would be

---

revenue taxes on the amount, which he never agreed to. (DE 38-3, Exh. 31, p. 28, Section k)

deemed rejected and if the defendant were successful in defending
the case, Mr. Bleecher would be held financially responsible for
the defendant's costs, but not attorney's fees.  However, if the
offer were found to be reasonable by the Court, the Court could
deny the plaintiff's attorney's fees after the date of the Offer of
Judgment. Scott asked for a response from Mr. Bleecher. (DE 38-3,
Exh. 29) Mr. Bleecher returned the letter endorsed "I agree" and
signed by him. (Id.)[4]

In August, the defendant presented an Agreement and
General Release (Agreement) to each plaintiff. (DE 38-3, Exh. 31)
The nine-page Agreement contains 19 paragraphs setting out the
conditions for payment of the settlement amount.  Mr. Bleecher's
affidavit states that Scott's e-mail presenting the Agreement to
the plaintiffs noted that Mr. Bleecher's other claims will be
excepted from the agreement. It also states that if the Agreement
is signed in lieu of filing the Offer of judgment with the Court,

_____

[4] Mr. Bleecher's affidavit includes several paragraphs
regarding his response to the offer of judgment.  First he states
that he did not agree with several of the terms, and that the
offer was not admissible as evidence.  He avers that Scott told
him "it doesn't mean that just sign on the letter and not on the
signature page." (DE 38-1, Exhibit A, ¶ 35)  Then he states that
he signed the letter in Scott's office on August 17, 2007, as his
acceptance of the Offer of Judgment. (Id., ¶ 36)  Mr. Bleecher
explains his acceptance as the result of Scott discussing Mr.
Bleecher's Whistleblower  claim against Nightingale.  She
recommended resolving the FLSA claim first and then proceeding
with the Whistleblower claim, owing to the difference in his
exposure to the defendant's demand for attorney's fees.  His
affidavit states that he told her in July  that she could
withdraw from his Whistleblower claim so that he could seek other
counsel, but she  did not withdraw from her representation of Mr.
Bleecher. (Id., ¶ 38)

the defendant will pay the agreed amounts and attorney's fees.in ten days.   If the plaintiffs want the Offer of Judgment and acceptance filed with the Court, payment will be 30 days thereafter. (DE 38-1, Exh. A, ¶ 39) Mr. Bleecher does not provide a copy of this e-mail.

Mr. Bleecher's affidavit states that on August 23, 2007, after a discussion with Scott, he did not accept the terms and did not sign the Agreement. Scott pressured him by telling him that if he would not sign the Agreement, she would have to petition the Court for attorney's fees, and it would be months before she was paid.   However she agreed that he could refuse to sign the Agreement.   He stated that he refused to sign it since it was a voluminous document and he had not been give sufficient time to consider it. (DE 38-1, ¶ 40)   Thereafter Scott sent an e-mail to Mr. Bleecher and to Rochelle Barnett, who also is said not to have signed the Agreement, stating that their Offers of Judgment were accepted and the payment would arrive in 30 days. (DE 38-3, Exh. 32)

Mr. Bleecher's affidavit states that he was not consulted about the stipulation of dismissal without prejudice and did not authorize Scott to file it on his behalf.   On August 28, 2007, he was presented with two checks for his portion of the settlement proceeds.   Thereafter Scott sent him a letter stating that it was her understanding that she no longer represented him on his Whistleblower claim and that she was providing him with the

6

relevant documents for his future attorney's use. (DE 38-1, Exh. A, ¶ 52)

Mr. Bleecher responded on August 30, 2007, that he had not terminated her from the representation nor had he ever told her that he had hired another attorney.  He asserted that she had effectively stalled his Whistleblower claim. (DE 38-3, Exh. 38) Scott responded that she had understood him to say that he had another attorney interested in the case; she also told him she would not place a lien on his Whistleblower file. (Id., Exh. 39) Scott followed this with an e-mail stating that the case was not stalled, but that it made sense to take care of the FLSA claim first, since Mr. Bleecher's exposure to a claim for defendant's attorney's fees was more risky for the Whistleblower claim, and the defendant had stated that it was not interested in settling the Whistleblower claim.  She noted that Mr. Bleecher's dissatisfaction with her handling of the claims was further reason to discontinue the representation. (Id., Exh 41)

Subsequently, Mr. Bleecher received a 1099 form showing gross proceeds of $1500.00 paid to an attorney.  (Id. Exhs. 45 and 46, copies (1) for recipient and (2) to be filed with returns)

1.  Cathleen Scott's Response

Cathleen Scott, P.A., filed a consolidated response to all of the plaintiff's motions.  With regard to the motion to vacate the stipulation and dismissal, Scott asserted that since there was no settlement agreement for the Court to approve, and since the case was dismissed without prejudice, the Court was not

required to review the settlement amount. Moreover, any motion to vacate the dismissal based on fraud is untimely.

She provides her affidavit and supporting exhibits.  In a letter after her initial consultation with Mr. Bleecher, she stated that she had spoken to several of his co-workers who also expressed an interest in joining the FLSA overtime suit.  She opined that his Whistleblower claim should not be filed at the same time, since the claims had questionable legal support and exposed him to unnecessary risks, such was exposure of having to pay legal fees to the defendant.  She agreed to draft a demand letter which included Mr. Bleecher's Whistleblower claim, but would not file the claim with the lawsuit. (DE 50-1)  This demand letter covered both the FLSA claim and the $50,000 Whistleblower claim. (DE 50-2) After discussing the matter with counsel for Nightingale, Mr. Weitzman, Scott subsequently sent Mr. Bleecher a letter asking him for more information about his Whistleblower claim. (DE 50-3)  Scott's affidavit states that Mr. Bleecher provided documents supporting his overtime claim. (DE 50 ¶ 7)  She advised him that the FLSA claim was being prepared. (DE 50-4)

on June 4, 2007, a month after the FLSA complaint was filed. Mr. Bleecher wrote to Scott regarding the Whistleblower claim after he had provided her with his chronology of events in April.  He asked for an update on the status of her work on the claim and her professional opinion of the claim. he also included tax returns and pay stubs from Nightingale. (DE 50-7)

Scott's affidavit states that during June she was working on the overtime pay calculations for each of the plaintiffs. Each provided a good faith estimate of the amount. Mr. Bleecher's estimate was $865.20. (DE 50, ¶ 11). Prior to sending the demand letter reciting the settlements sought by each of the plaintiffs, Scott obtained consent from each plaintiff for the amount of that settlement. (Id., ¶ 12)  The demand letter was sent June 18, 2007, seeking wages and liquidated damages for Mr. Bleecher of $1,730.40. (DE 50-8)  Negotiations ensued for the next sixty days. The affidavit states that on August 7, 2007, Mr. Weitzman filed an Offer of Judgment. (DE 50, ¶ 13).[5]  The offer to Mr. Bleecher was for $850.00. (DE 50-9) Scott's affidavit states that Mr. Bleecher came to her office on August 13, 2007, and agreed to accept the $850, but refused to sign a general release. (DE 50, ¶ 15)

Scott's affidavit states that Mr. Bleecher returned to her office August 23 asking about the status of the Whistleblower claim and asking whether the FLSA settlement would affect his ability to pursue his Whistleblower claim. Scott responded that his Whistleblower claim would not be affected if he did not sign the FLSA release. However, she reiterated that the Whistleblower claim was too risky and she did not recommend that he pursue it in court. Similarly his claim for unpaid vacation pursuant to Fla. Stat. § 448.08 was also too risky under the prevailing party attorney fee rule. Scott avers that she told him she would not

---

[5] While the offer of judgment was  dated August 7, 2007, it was not filed with the Court.

represent him for those claims, which upset him. (DE 50, ¶ 16) However, Mr. Bleecher did write "I agree" and sign Scott's letter to him setting forth his FLSA settlement amount in the offer of Judgment as $850. (Id., and DE 50-10) Ms. Barnett similarly signed a letter accepting the Offer of Judgment. (DE 50-11)

Scott avers that the rest of the plaintiffs each signed a general release, after discussing it with her. She states she did not pressure any plaintiff to accept the offer. (DE 50, ¶ 18) Scott avers that she filed a notice of Bleecher and Barnett's acceptance of the Offer of Judgment on August 23, 2007.[6] On August 28, Scott sent two settlement checks to Mr. Bleecher and a letter confirming that she no longer represented him. (DE 50 50, ¶ 21, DE 50-13 and DE 50-14).

In November 2008 Scott received a call from the Florida Bar advising her that Mr. Bleecher had filed a complaint for not preserving his Whistleblower claim.[7] Scott was asked to send Mr. Bleecher a copy of the settlement agreement and general release. Scott informed The Bar that there was no general release. Scott provided Mr. Bleecher with a copy of the Offer of Judgment and the Acceptance.[8]

---

[6] Like the offer of judgment, this notice of acceptance was not filed with the Court.

[7] Mr. Bleecher's reply states that he did not file a complaint, but merely made an inquiry.

[8] Scott incorrectly avers that these documents had been filed. (DE 50 ¶ 25)

10

Mr. Bleecher's reply argues that since the "offer of judgment settlements" were not reviewed by the Court, Scott stripped the Court of its jurisdiction. (DE 55, p. 3)  He asserts that the Court has the authority to review offers of judgments in FLSA cases.

He also asserts that because he was unfamiliar with the provisions of the FLSA, he was not aware of his right to liquidated damages, and signed his acceptance of the $850.00 offer of judgment in ignorance of his rights, and thus releasing claims he did not know existed.[9] He also disputes Scott's recitation of the date he signed his acceptance of the offer of judgment, and asserts he never gave her any wage and hour documents.[10]   He contends that Scott misconstrues many of his arguments, thus raising issues with not bearing on his motion.

Mr. Bleecher states that Scott committed fraud on the Court by not presenting the court with the Offer of Judgment and the Settlement Agreements and General Releases, and by filing the stipulation of dismissal without prejudice without Mr. Bleecher's authorization.   He also alleges that Scott compromised his Whistleblower claim by not preserving it in the terms of the Settlement Agreement and General Release.

---

[9] This contradicts Mr. Bleecher's affidavit which states that in June 2007, he read Scott's calculations of his overtime pay and the liquidated damages totaling $1730.40 as set forth in the demand letter. (DE 30, Exh. A. ¶ 20)

[10] However, he does not suggest that his letter of July 4, 2007, (DE 50-7) stating that he had enclosed his pay stubs from the company, is incorrect.

2. Nightingale's Response

        Nightingale Nurses filed a consolidated response to the
motion to vacate judgment, motion for evidentiary hearing and
motion for sanctions.  It asserts that because the dismissal was
without prejudice, even though Mr. Bleecher received $850.00 from
the defendant he could have filed his claims again if he was
dissatisfied with the amount he received.  Instead he waited more
than two years to file the instant motions because he now believes
that his Whistleblower claim in state court has been compromised by
the proceedings in the instant case.

        The response states that the defendant did not needlessly
delay the FLSA litigation. On July 10, 2007, the defendant e-mailed
Scott stating that the defendant's counter offer was predicated on
not incurring unnecessary fees for the defendant, and urged the
plaintiffs to respond to the offer. (DE 43, Weitzman's affidavit,
¶ 6) Counsel received the plaintiffs' demand letter  that same day,
three days before the defendant's response to the complaint was
due.  (Id., ¶ 7)  Accordingly, the defendant's counsel began
drafting the settlement papers on July 11, 2007, instead of
drafting a response to the complaint. (Id., ¶ 8)  However, on July
19, counsel received an e-mail from Scott saying that the clients
had reneged on the settlement. (Id., § 9; DE 43-3)  Accordingly, on
July 20, counsel drafted Nightingale's Answer and Affirmative
Defenses and filed it on Monday, July 23, 2007). (DE 43, ¶ 10)

        Thereafter defendant's counsel drafted the Offers of
Judgment.  Scott responded by telephone that all of the plaintiffs

12

had accepted the Offers of Judgment. Scott also offered to have the plaintiffs sign settlement agreements and releases  for payment of the amounts in ten days and in lieu of having to litigate the fee amount. (Id., ¶ 13)  The defendant agreed to this offer and drafted the settlement agreements. (DE 43-5)  Scott requested an additional five days to return signed settlement agreements, in case there were any "hiccups." (Id.)

On August 23, 2007, the defendant received Mr. Bleecher's signed acceptance of the Offer of Judgment, but Mr. Bleecher would not sign a settlement agreement or release.  (DE 43 ¶ 16)  However, Mr. Bleecher accepted and deposited a check for $850.00 received from Nightingale pursuant to the Offer of judgment.  Thereafter the parties agreed to and filed a Joint Stipulation of Dismissal Without Prejudice.

Mr. Bleecher's reply asserts that any prejudice to his Whistleblower claim is not relevant to the issue of whether his FLSA claim was handled properly.  However, he also argues that the settlement agreement and release drafted by Nightingale has prevented him from obtaining counsel for his Whistleblower case in state court, even though he did not sign those documents.

Mr. Bleecher's reply argues that since the scheme denied him due process of law for his FLSA claims, and deprived the Court of subject matter jurisdiction over the judgment, the judgment must be set aside under Rule 60(b)(4).  Moreover, the defendant deprived the Court of its right to review the attorney's fees and the tax implications to the defendants.

13

B.  Plaintiff's Emergency Motion for Evidentiary Hearing (DE 26)

Mr. Bleecher provides the witness statement of Karen Manzo and affidavits of plaintiffs Rochelle Barnett and Ginger Minkin in support of his request for a hearing on the issues of (1) whether Bleecher did not consent to the terms of the Settlement Agreement and General Release,  and (2) whether Scott and the defendant colluded to bar Bleecher's Whistleblower claim from being prosecuted against Nightingale by (a) delaying the claim with a 2-year statute of limitations and (b) by drafting the settlement Agreement and the General Release which barred his Whistleblower claim.  Mr. Bleecher asserts that on June 11, 2009, Nightingale filed a motion to dismiss his state court Whistleblower complaint. He wants counsel to respond to the motion to dismiss, but he says that counsel will not enter an appearance until the instant judgment is vacated.  Accordingly, on November 2, 2009, he filed the instant motions.[11]

Scott's  consolidated response does not address the request for an evidentiary hearing.  The defendant's response to the motion asserts that no hearing is necessary since the resolution of the FLSA claim has no effect on his Whistleblower claim.

---

[11] The motion notes that he filed the pro se Whistleblower complaint in state court on October 28, 2008.  The court granted him extensions of time to serve the defendant. Service was effected May 22, 2009.  He does not  discuss whether the state court has set an extended deadline to respond to the June 11, 2009,  motion to dismiss.

Mr. Bleecher's reply agrees that his Whistleblower claim is not at issue here.   But he then argues that the prejudicial terms of the settlement Agreement and General Release in the FLSA case have prevented him from obtaining counsel in the Whistleblower case.

C.  Plaintiff's Emergency Motion for a Protective Order (DE 27)

This motion asks the court to issue a protective order or place an injunction against Nightingale Nurses LLC, its counsel Allan H. Weitzman, the Law Firm of Proskauer Rose, LLP, the Law Office of Cathleen Scott and Cathleen Scott, Esq., as well as

> any and all past and future organizations, successors, heirs, employees, affiliates, offices, subsidiaries, divisions, agents of the above  from contacting all witnesses and potential witnesses in this case without first obtaining court approval and a court order prohibiting and or monitoring communications between Scott and Weitzman.

(DE 28 pp. 2-1) Mr. Bleecher asserts that counsel for the parties colluded in the FLSA case to privately settle the claims of one opt-in plaintiff, Scott Span, and mislead, influenced and coerced the rest of the class members from forming a class action to prosecute their FLSA claims.[12]   Mr. Bleecher wants the Court to

---

[12]   Mr. Bleecher's Whistleblower claims relate to his allegations that Nightingale required employees to falsify nursing documents, nursing licenses and  nursing qualifications. For example, as an exhibit to the motions, he provided a letter from Karen Manzo, a witness to these acts, whom he wishes to use as a witness in the motion  to set aside the judgment in this case.  (DE 38-1, Exh. B) He asks the Court to bar the listed persons and entities from contacting Ms. Manzo without court approval, since Ms. Manzos was willing to testify in his Whistleblower case in state court.

15

prohibit communications designed to disrupt the FLSA litigation on the issues of the proper damages and the matter of attorney's fees.

In particular, Mr. Bleecher points out that prior to filing the instant motions, he sent letters to both Scott and Weitzman pursuant to S.D.Fla.R. 7.1(a)(3). Weitzman responded to the letter by stating that the attorney's fee settlement was reasonable, and Mr. Bleecher had cashed the settlement check for the amount of the offer of judgment which he accepted. (DE 38, Exh. G) Scott's response stated that she concurred with Weitaman's response regarding the FLSA issues and then addressed Mr. Bleecher's Whistleblower arguments. (DE 38-1, Exh. H) He asks the Court to (1) prohibit them from assisting each other with documents without court approval; (2) forbidding or monitoring any correspondence between them related to this case, and (3) forbidding or monitoring any exchange of information between them, related to this case, by any means.

In response to a Court Order for a supplemental memorandum of law, Mr. Bleecher filed a memorandum of law discussing the three types of federal injunctions: the traditional injunction, the statutory injunction and an injunction under the All Writs act, 28 U.S.C. § 1651(a), a codification of the Court's inherent power to protect its jurisdiction. With the filing of the motion to vacate the judgment, Mr. Bleecher asserts that this is again an ongoing case and the court must prevent counsel's communications with witnesses.

16

Scott's response (DE 52) to the motion for a protective order notes that a protective order pursuant to Fed.R.Civ.P. 26(c)(1) applies to discovery in a civil case. Since the case is closed, there is no discovery at issue. Nor does Mr. Bleecher have standing to seek protection for persons, such as Ms. Manzo, who have not joined in the relief requested in these motions. Scott also argues that the motion has not met the requirements for a preliminary injunction.

Mr. Bleecher filed an unopposed motion for a 5-day extension of time to file a reply owing to a medical condition and in order to obtain a witness affidavit. Due to an oversight the court failed to rule on this motion. However, as discussed below, a witness statement is not relevant to the relief sought.

The defendant did not respond to the motion for a protective or injunction.

<u>III. RECOMMENDATIONS OF LAW</u>

<u>A.   Plaintiff's Motion to Vacate the Judgment and Set Aside the Stipulation (DE 31)</u>

The motion to vacate judgment and stipulation sets forth three bases for relief. First the dismissal was based on fraud on the Court.   Second, contracts which compromise and release liquidated damages under the FLSA are void as contrary to public policy.   Finally, Fed.R.Civ.P. 60(b)(4) grants relief for fraud perpetrated on a party by his or her own counsel.

1.  Public Policy and Rule 60(b)(4)

Fed.R.Civ.P. 60(b) provides:

(b) Grounds for Relief from a final judgment, order, or Proceeding. On motion and just terms the court may relieve a party of its legal representative from a final judgment, order or proceeding for the following reasons:

(1)   mistake, inadvertence, surprise , or excusable neglect;
(2)   Newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
(3)   fraud, (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
(4)   the judgment is void;
(5)   the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is not longer equitable; or
(6)   any other reason that justifies relief.

Fed.R.Civ.P 60(c) provides "A motion under Rule 60(b) must be made within a reasonable time and for reasons (1), (2) and (3) no more than a year after the entry of the judgment or order or the date of the proceeding."  In this argument, Mr. Bleecher does not argue that the judgment is void due to fraud on the court or fraud against him by his attorney.  Rather he asserts that the judgment is void owing to public policy against compromise and release of liquidated damages under the FLSA.  Lynn Food Stores v. Dept. of Labor, 679 F.2d 1350 (11th cir. 1982).

In Lynn, an employer attempted to negotiate the payment of back wages and liquidated damages with the Department of Labor,

18

after an  the Department's investigation revealed that back wages were owed.  Unable to reach an agreement with the Department of Labor, the defendant approached its employees with an offer to resolve the claims.  The defendant would pay a lump sum to the employees in return for their waiver of their rights under the FLSA.  Fourteen employees accepted the settlement for $1000 each for back wages, which had been calculated by the Department of Labor as totaling more than $10,000.  The employer then filed an action for declaratory judgment seeking judicial approval of the settlement.  The Eleventh Circuit Court of Appeals upheld dismissal of the employer's case, holding that the FLSA was enacted to protect workers from oppression and could not be nullified by contract or otherwise.  Since the agreements had not been negotiated or supervised by the Department of Labor, and because they were not entered as a stipulated judgment in the lawsuit, they could not be approved under 29 U.S.C. § 216(b and c).

The Court in Lynn noted that claims for overtime wages could be brought in two ways; by the Department of Labor pursuant to § 216(c) or by the employees pursuant to § 216(b).  Accordingly, the Court finds that Lynn is inapplicable to claims brought by the employees.  However, dicta in Lynn does note that in claims brought by employees, when the parties bring the court a proposed settlement, "the court may enter a stipulated judgment after scrutinizing the settlement for fairness." 679 F.2d at 1353.

As the defendants point out, the  instant case was not resolved by entry of a judgment against the defendant. The parties

did not file a proposed settlement for scrutiny by the Court. Rather the case was dismissed without prejudice to the parties. While the actual settlement agreement and release signed by some of the plaintiffs, and the offer, identified as an offer of judgment, accepted by Mr. Bleecher, appear to be similar to the settlement entered into by the employer in the Lynn case, they are not the same.

First, since the employees, and not the Department of Labor, initiated the claims against Nightingale, the negotiations and the settlements did not have to be reached under Department of Labor supervision.  As the Lynn court noted, when the employees sue, they may negotiate the settlement. Second, this case does not involve entry of a final judgment.

Mr. Bleecher also cites Silva v. Miller, 349 Fed.Appx. 349, 2009 WL 73164 (11th Cir. 2009) in which the parties entered into a settlement agreement for payment of the full compensation under the statute and sought dismissal with prejudice of the case, without court approval of the settlement. After oral argument, the court concluded that the wages settlement of $20,000 was reasonable, but rejected plaintiff's counsel's retainer seeking 40% of the settlement amount ($8000) for attorney's fees.  The court concluded that a reasonable amount was $6,325 for attorney's fees and $1,389 in costs, and awarded that to plaintiff's counsel. Citing Lynn, the appellate court found that the settlement agreement necessarily involved a compromise of the FLSA claim, and was subject to court scrutiny. 349 Fed.Appx. at 351.

However, as Scott and the defendant point out, there is
no public policy requiring court scrutiny of the circumstances
surrounding dismissal without prejudice of a FLSA case. Perez-Nunez
v. North Broward Hospital District, 609 F.Supp.2d 1319, 1320-21
(S.D.Fla. 2009), quoting, Kerr v. Powerplay Arcade, Inc., 2007 WL
3307091 at *1 (M.D.Fla. 2007)("where [a] 'case is being dismissed
without prejudice, there will be no final adjudication on the
merits,' and no settlement or resolution of FLSA claims for the
court to review for fairness."

In the instant case, the parties did not submit a motion
for entry of a final judgment based on settlement agreements. Thus
neither Lynn nor Silva is instructive. The case was dismissed
without prejudice. Accordingly, Mr. Bleecher, who refused to sign
the settlement agreement and General Release, was free to continue
to pursue his claims if he so desired. Perez-Nunez. The issue for
the Court is whether the Stipulation for Dismissal Without
Prejudice, which Mr. Bleecher alleges was never presented to him
and which he never authorized to be filed on his behalf,
constituted fraud on the Court and/or fraud on him by his own
counsel, discussed below.

2. Fraud on the Court

Rule 60(c) provides that a party seeking relief from a
court order by alleging fraud, misrepresentation of misconduct by
an opposing party pursuant to Fed.R.civ.p. 60 (b)(3), must seek
relief no more than an year after entry of the order. Mr. Bleecher
has failed to do so. Only a few months after entry of the

dismissal without prejudice, he received 1099 forms from Nightingale for the attorney's fees pursuant to the settlement agreement, which he did not sign.  He did not attempt to vacate the order of dismissal at that time.

Moreover, the parties are not required to recite the circumstances of the request to dismiss the case without prejudice. Perez-Nunez.  Mr. Bleecher argues that it is fraud on the court to file a stipulation containing false information identifying the parties to the stipulation. Toscano v. C.I.R., 441 F.2d 930, 933 (9th cir. 1971)  In Toscano, counsel filed a stipulation, on behalf of the taxpayer and his wife, regarding a tax deficiency the taxpayer owed to the Internal Revenue Service. The "wife" never received notice of the settlement and the entry of a deficiency against her as well as against the taxpayer. After the death of the taxpayer, the Internal Revenue Service sought to enforce the settlement on his wife.  In light of her evidence that she was never married to the taxpayer and had no notice of the stipulation, the appellate court held that the tax court could set aside a final decision on the narrow ground of fraud on the court, since she had been deprived of her day in court.

The Court finds that Mr. Bleecher's reliance on Toscano is misplaced, since it is based on a final decision of the Internal Revenue court, entered against the  one who had no notice of the stipulation.  In the instant case, Mr. Bleecher's claim was dismissed without prejudice to his ability to continue to seek back wages pursuant to the FLSA.  Approximately six months after the

order of dismissal without prejudice, he received 1099 forms from Nightingale for the attorney's fees pursuant to the settlement agreement which he did not sign.  He did not attempt to vacate the order of dismissal at that time.

Accordingly, Mr. Bleecher's claim of fraud on the Court by the defendant must fail, since it is barred by the Rule 60(b)(3) time limit for filing such a claim, and is not applicable to stipulations for dismissal without prejudice.[13]  However, the Court must consider whether filing the joint stipulation without Mr. Bleecher's knowledge or authorization constitutes fraud on the Court and the client by Ms. Scott.

3.   Fraud Perpetrated on a Party by His Own Counsel

Mr. Bleecher asserts that the order of dismissal without prejudice is void pursuant to Fed.R.Civ.P. 60(b)(4), since he was not informed about the stipulation and did not authorize the stipulation for dismissal without prejudice or the imposition of tax penalties against him by the defendant's issuance of 1099 forms.[14]

As an  initial matter, the one year limitation on vacating judgments based on fraud by an adverse party, set forth in

---

[13]  Mr. Bleecher also argues that it was fraud on the court for the defendant not to file its offer of judgment.  Again, this claim is barred by the one year limitation in Rule 60 (c), and is not relevant since the dismissal was without prejudice.

[14] This discussion does not include consideration of the motion seeking sanctions against Scott for filing the stipulation without his authorization.  This discussion is limited to consideration of the legal effect of the stipulation.

Fed.R.Civ.P. 60(c), does not apply to orders procured by fraud of one's own counsel. <u>Mckinney v. Boyd</u>, 604 F.2d 632, 634 (9th Cir. 1968).

With regard to the tax penalty, the 1099s were issued approximately six months after Scott ended her representation of Mr. Bleecher. During that representation she had clearly informed the defendant that Mr. Bleecher had not signed the Settlement Agreement which provided for the 1099 distributions.[15] Accordingly, the Court cannot find that the defendant's issuance of the 1099 forms was the result of Scott's fraud on Mr. Bleecher or the Court.

With regard to the stipulation of dismissal without prejudice, Mr. Bleecher asserts that the order of dismissal should be set aside pursuant to Rule 60(b)(6), which is not subject to the one-year limitation. Mr. Bleecher contends that Scott sold him out in order to obtain inflated attorney's fees. Mr. Bleecher cites <u>McKinney</u>, in which counsel for a party, by engaging in collusion with the client's ex-wife, stipulated to a settlement and dismissal

---

[15] Scott's notification to the defendant that Mr. Bleecher had not signed the Settlement Agreement and General Release also demonstrates that these documents could not be the basis for barring his Whistleblower claim. Mr. Bleecher does not offer any legal authority showing that a contract which he did not sign is binding on him in the instant circumstances, particularly since paragraphs 2.(m) and (p), and 4 of the unsigned Settlement Agreement and paragraphs (vii) and (viii) of the unsigned General Release specifically exempt his Whistleblower claims. (DE 38-3 Exh. 31) He asserts that the bar to his Whistleblower claim is contained in paragraph 18 of the unsigned Settlement Agreement, which bars his future employment with the defendant. However, Mr. Bleecher repeatedly states that the problems with his Whistleblower case should not be a basis to set aside the Order of Dismissal Without Prejudice.

with prejudice without the knowledge or consent of his client,.
The Court held that the fraud on the client by his own counsel
warranted reopening of the order of dismissal with prejudice.

The Court is not swayed by McKinney, because as in
Toscano, the fraud deprived the party from his day in court.
Unlike McKinney, Mr. Bleecher could have re-filed his claims
immediately or when he received the 1099 forms. Accordingly,
considering only the effect of the unauthorized stipulation of
dismissal and its effect on Mr. Bleecher's claims, the Court finds
that since the dismissal was without prejudice, Scott did not
deprive Mr. Bleecher of his day in court.

The court should deny the Plaintiff's Motion to Vacate
the Judgment and Set Aside the Stipulation.  The stipulation for
dismissal without prejudice was not against public policy.  Perez-
Nunez. Insofar as it asserts fraud on the court by the defendant,
it is untimely. Fed.R.Civ.P. 60(c)(1). Finally, neither the alleged
fraud by defendant nor the alleged fraud by Scott deprived the
defendant of his day in court on his FLSA claim, since the claim
was dismissed without prejudice.  Perez-Nunez; Toscano; McKinney.

B.  Plaintiff's Emergency Motion for Evidentiary Hearing (DE 26)

Mr. Bleecher's motion asks the Court to hold a hearing so
that he can present witnesses affirming the validity of his
Whistleblower claim.  He asserts that the collusion between Scott
and the defendant in this case had the effect of barring his
ability to secure counsel for the state court case and thwarting
his ability to prosecute that case.

25

The memorandum of law asserts that the defendant's repeated motions for extensions of time to respond to the complaint were mere stalling tactics, and that when it finally filed an Answer to the Complaint, it was ten days late without leave of the Court, and without objection from Scott. The motion also asserts Scott vexatiously multiplied the proceedings in the case, such as filing a joint scheduling report while the settlement proceedings were taking place. The memorandum of law then copies nearly all of the memorandum of law for the motion to vacate the judgment.

Scott's response to this motion notes that the Court ordered the parties to file a joint scheduling report, and that she did not vexatiously multiply proceedings by complying with the Court's Order. Mr. Bleecher's reply contends that Scott's response misses the larger point, that Scott conducted the litigation in bad faith.

The defendant's response to the motion notes that Mr. Bleecher requests the hearing in order to present evidence of his Whistleblower claim, which Mr. Bleecher has conceded is not relevant to his motion to reopen his FLSA case. Mr. Bleecher's reply to the defendant's response agrees that the Whistleblower claim is not relevant to his reasons for attempting to vacate dismissal without prejudice of his FLSA claim.

The Court finds that none of the proposed witnesses have joined in this motion to vacate the order of dismissal without prejudice. The testimony from witnesses about the Whistleblower claim is not relevant to the motion to vacate the order of

26

dismissal without prejudice.  The parties have provided sufficient evidence on the issue of the stipulation of dismissal for the Court to reach a conclusion on that motion.  Accordingly, the motion for an emergency evidentiary hearing should be denied.

C.  Plaintiff's Emergency Motion for a Protective Order (DE 27)

Mr. Bleecher's original memorandum of law in support of a protective order or an injunction did not provide any legal authority for the relief sought: to prevent counsel for the parties from discussing or sharing information about the instant case.  The supplemental memorandum of law does not discuss protective orders.  Rather it asserts that the Court should enter an injunction pursuant to 28 U.S.C. §1651(a) to protect the court's jurisdiction.

Mr. Bleecher cites Klay v. United Healthgroup, Inc., 376 F.3d 1092 (11th Cir. 2004), which sets forth the factors which the Court must consider on a motion for entry of a preliminary or permanent injunction.

> A district court may grant injunctive relief only if the moving party shows that (1) it has a substantial likelihood of success on the merits; (2) irreparable harm will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause to the opposing party; and (4) if issued, the injunction would not be adverse to the public interest.

Id. at 1097, quoting, Siegel v. Lepore, 234 F.3d 1163, 1176 (11th Cir. 2000).  Mr. Bleecher, without discussing any of these factors, asserts that the Court should enter an injunction against the parties' counsel and law firms.

The defendant did not respond to the motion for an injunction. Scott filed a response asserting that insofar as the motion sought a protective order, Mr. Bleecher has provided no legal basis for such an order. Fed.R.Civ.P. 26(c)(1) provides for protective orders during discovery, but this case is closed and discovery is not being conducted. Insofar as the motion seeks entry of an injunction, the movant bears the burden of establishing the factors demonstrating entitlement to the injunction. Because Mr. Bleecher cannot demonstrate a likelihood of success on his motion to vacate the order of dismissal without prejudice, he is not entitled to entry of an injunction.

Mr. Bleecher sought an extension of time to obtain a witness statement, regarding his Whistleblower claim, in support of his request for an injunction. Due to inadvertence, this motion was not timely granted. However, as discussed above, Mr. Bleecher concedes that his Whistleblower claim is not relevant to his motion to vacate the order of dismissal without prejudice. Nor has Mr. Bleecher established his likelihood of success on the merits, since the undersigned has found that he has offered no legal  authority which supports his motion to  to set aside the  order of dismissal without prejudice. Accordingly, the Court should deny his motion for an injunction against counsel for the parties and their law firms.

## IV. CONCLUSION

This Court having considered carefully the pleadings, arguments of counsel, and the applicable case law, it is hereby

RECOMMENDED as follows:

(1) That the Court DENY Plaintiff's Motion to Vacate the Judgment and Set Aside the Stipulation (DE 31);

(2) That the Court DENY Plaintiff's Emergency Motion for Evidentiary Hearing (DE 26); and

(3) That the court DENY Plaintiff's Emergency Motion for a Protective Order (DE 27).

The parties will have 14 days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, for consideration by The Honorable William P. Dimitrouleas, United States District Judge. Failure to file objections timely shall bar the parties from attacking on appeal factual findings contained herein. LoConte v. Dugger, 847 F.2d 745 (11th Cir. 1998), cert. denied, 488 U.S. 958 (1988); RTC v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

DONE AND SUBMITTED at Fort Lauderdale, Florida, this 8th day of September, 2010.

_Lurana S. Snow_
LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

Copies to:

Mr. Heath Bleecher, pro se
All Counsel of Record

29